NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT C. SUNDT, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 12-cv-257 (DMC)(MF) |
| TELCORDIA TECHNOLOGIES, INC., et al,, | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon the Motion of Defendants Telcordia Technologies, Inc. ("Telcordia"), the Telcordia Technologies, Inc. Departmental Benefits Committee (the "DBC"), the Telcordia Technologies, Inc. Employee Benefit Committee (the "EBC") and the Telcordia Technologies Pension Plan (the "Plan") (collectively "Defendants") to Dismiss Plaintiff Robert C. Sundt's ("Plaintiff") Complaint pursuant to FED. R. CIV. P. 12 (b)(6). (ECF No.11). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' Motion to Dismiss the Complaint is **granted with prejudice as to Counts I and III and granted without prejudice as to Count II**.

## I. BACKGROUND[1]

This action involves a dispute in the amount of the pension payments being made to Plaintiff by Defendants as part of Plaintiff's retirement pension under the Plan.

Plaintiff was employed in the telecommunications industry for thirty-five (35) years beginning in 1964. Plaintiff was employed by Telcordia from 1994 until December 22, 2001. Between 1964 and 1994, Plaintiff was employed by other telecommunications entities, including Pacific Bell Telephone Company ("Pacific Bell"). Pacific Bell and the other telecommunications entities form a "controlled group," as defined in the Internal Revenue Code, with Telcordia. In 1995, Plaintiff received a $425,222.85 lump sum payment from Pacific Bell's pension plan for his time of employment with Pacific Bell from 1964 until 1994.

During the latter part of 2001, Telcordia advised Plaintiff and other members of the department where he was then employed, that it intended to reduce the department's headcount by one. Telcordia made an inquiry as to whether any employee working in the department was interested in giving up his or her employment. Plaintiff, who was then 59 years of age, responded by requesting information regarding the retirement benefits to which he was then entitled from the Plan. In response to the request, Defendants informed Plaintiff that if he retired at that time, he would be entitled to receive a monthly life annuity in the amount of $5,091.75, and that this monthly benefit would be payable immediately following his retirement in December 2001. On the basis of the information provided to him by the Defendants, Plaintiff concluded that he could afford to retire in December 2001. Defendants then provided Plaintiff with additional documents,

---

[1] The facts set forth in the Background section have been taken from the Complaint. On this Motion to Dismiss, the Court will accept the factual allegations in the Complaint as true and construe all facts in Plaintiff's favor.

2

including a retirement application form, confirming that $5,091.75 was the amount of the monthly annuity payments that Plaintiff was entitled to receive. Plaintiff completed and returned the application form that had been provided to him by the Defendants in order to retire and begin receiving retirement benefits from the Plan.

Plaintiff retired on December 22, 2001, and from that date until March 31, 2010, the Plan paid Plaintiff a monthly pension benefit of $5,091.75. In a letter dated March 31, 2010, Defendants informed Plaintiff that: (i) the information they had provided to Plaintiff on and before December 2001 regarding the amount of monthly retirement benefits to which he was then entitled was inaccurate; (ii) the pension benefit Plaintiff had been receiving had been miscalculated; (iii) the correct amount of Plaintiff's monthly pension benefit is $971.48, and (iv) Defendants intended to reduce Plaintiff's monthly benefit to this lower amount effective April 30, 2010. Plaintiff has been receiving $971.48 per month since that date. Telcordia and other entities that emerged from the AT&T breakup, including Plaintiff's prior employer, Pacific Bell, are parties to a Mandatory Portability Agreement ("MPA") under which each entity is required to take into account the service of employees, such as Plaintiff, who migrate between or among them. Thus, Plaintiff's retirement benefit from Telcordia was based on his aggregate service with Pacific Bell and Telcordia. Defendants should have offset the monthly payment to reflect the $425,222.85 lump sum payment that Plaintiff received in 1994 from the Pacific Bell plan.

Since receiving notice of the change in monthly pension payments, Plaintiff has contacted members of Telcordia responsible for retirement benefits administration in an effort to appeal this determination and have his monthly payments returned to $5,091.75.

Plaintiff's Complaint states three causes of action. (Compl. Jan 13, 2012, ECF No. 1). In

Count I, Plaintiff claims that Defendants breached their fiduciary duty and responsibility to properly administer the Plan, including a responsibility to communicate accurate information to participants and to not mislead them with regard to their rights and benefit entitlements under the pension plan. In Count II, Plaintiff asserts an equitable estoppel claim, arguing that Defendants made inaccurate representations regarding Plaintiff's monthly retirement benefits, which Plaintiff reasonably relied on to his detriment in making an informed decision about whether to retire. In Count III, Plaintiff asserts a breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(1)(B) and (a)(3).

In response to the Complaint, Defendants filed this Motion to Dismiss and the Accompanying Brief in Support ("Def. Moving Br.") on March 9, 2012 (ECF No. 11, 13). Plaintiff filed its Opposition Brief ("Pl. Opp'n Br.") on April 23, 2012. (ECF No. 17). Defendants filed their Reply Brief (" Def. Reply") on May 14, 2012. (ECF No. 18). The matter is now before this Court.

## II. STANDARD OF REVIEW

In deciding a motion under Rule 12(b)(6), the district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. Cnty.of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. To survive a motion to dismiss, the complaint must state a plausible claim. Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1950 (2009). Thus, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 555.

## III. DISCUSSION

### Count I. - Breach of Fiduciary Duty, Pursuant to 29 U.S.C. § 1132 (a)(2) and (a)(3)[2]

In Count I, Plaintiff asserts that, as fiduciaries, Defendants had a duty and responsibility to properly administer the Plan, which included a responsibility to communicate accurate information to Plan participants and to not mislead Plan participants with regard to their rights and benefit entitlements under the Plan. (Compl. 6). Plaintiff further contends that Defendants breached this duty by repeatedly failing to provide Plaintiff with accurate information regarding his rights and benefit entitlements under the Pension Plan, causing him to make decisions that caused he and his family irreparable harm. (Compl. 6, 7). Plaintiff seeks an order restoring his monthly annuity to $5,091.75 per month, the amount that he received between December 2001 and March 2010, on a retroactive basis. (Compl., Prayer for Relief ¶ D).

Defendants argue that Plaintiff has failed to plead a fiduciary breach claim for two reasons. First, Defendants assert that the difference between what Plaintiff received and what Plaintiff was actually entitled to per month constitutes a windfall for Plaintiff. "Equitable relief" is not available to allow a Plaintiff to retain and continue to receive a windfall. See US Airways, Inc, v. McCutchen, 663 F.3d 671, 678 (3d Cir. 2011) ("Equity abhors a windfall.") Here, Plaintiff has already received $5,091.75 per month ($4,120.27 more per month than the $971.48 that he

---

[2] In its Opposition Brief, Plaintiff states that it no longer bases its first cause of action on 29 U.S.C. § 1132 (a)(2). (Opp'n Br. 1, fn. 1). For purposes of this section of the Discussion, the Court will focus its analysis of the facts as they apply to 29 U.S.C. § 1132 (a)(3) only.

was entitled to receive under the terms of the Plan), for the period from December 2001 until March 2010, resulting in over $500,000.00 in overpayments. (Def. Moving Br. 8). Plaintiff now asks the Court to continue receiving overpayments of $4,120.27 per month for life. This sort of "equitable relief" is not of the type contemplated under ERISA § 502 (a)(3).

The facts here are similar to those in Sheward v. Bechtel Jacobs Co. LLC Pension Plan for Grandfathered Emp., No. 3:08-cv-428, 2010 U.S. Dist. LEXIS 19696 (E.D. Tenn. Mar. 4, 2010), a Sixth Circuit case that this Court finds particularly persuasive. In that case, a plaintiff's fiduciary breach claim under § 502(a)(3) was dismissed where "plaintiff received a windfall in the form of a double payment of his . . . benefits" after his pension benefit was miscalculated. Id. at *15. As in the present case, the plan in Sheward mistakenly failed to offset the plaintiff's benefit to take into account the benefit that plaintiff previously accrued with a prior employer. (Reply 4). Plaintiff in Sheward claimed that "he relied upon" the mistaken information provided by the plan in making his decision to retire. Sheward, 2010 U.S. Dist. LEXIS 19696 at *1. As in this case, the error was not discovered until years after the plaintiff retired and began receiving benefits. Id. at *5. In Sheward, plaintiff unsuccessfully sought an injunction pursuant to ERISA § 502(a)(3) preventing his employer from correcting the error.

Here, Plaintiff unsuccessfully attempts to distinguish the facts here from those in Sheward. (Pl. Opp'n. Br. 10, 11, 12). The only difference that Plaintiff appears to point out is the timing of the "offsetting" payment by plaintiff's prior employer in Sheward. However, the fact that plaintiff in Sheward received that payment at the same time that the new employer discovered its mistake was irrelevant to the court's holding that the plaintiff could not receive a double benefit. Sheward, 2010 U.S. Dist. LEXIS 19696 at *5. Plaintiff Sheward's argument that

he relied on the representations of his pension amount to his detriment cannot be reconciled with the fact that he received pension benefits as required under the terms of the BJC Plan and the USEC plan, and in fact, received part of that benefit twice. Id. Plaintiff here has not cited to any cases where a plan participant was allowed to recover twice the amount of benefits that he was entitled to, as a result of a pension plan administrator's mistake in benefit calculations.

Even more persuasive is Defendants' second argument, that in the Third Circuit "a mere mistake will not render [a fiduciary] liable for a loss" and "[o]nly fault - in the form of bad faith or negligence - will." Leckey v. Stefano, 501 F.3d 212, 224 (3d Cir. 2007); see also Jones v. S. Williamsport Sch. Dist., No. 4:11-cv-1179, 2012 U.S. Dist. LEXIS 10099, at 9-10 (M.D. Pa. Jan. 25, 2012) (quotation omitted)) ("When a fiduciary exercises a power with which it has been vested, a mere mistake in exercising that authority will not render it liable for the resulting loss."); Burke v. Latrobe Steel Co., 775 F.2d 88, 91 (3d Cir. 1985) ("[A] pensioner does not establish a violation of fiduciary duty simply by showing that the administrator did not follow the terms of the plan. If such action is undertaken pursuant to a good faith, albeit erroneous, interpretation, ERISA's fiduciary provisions are not violated. To establish liability, willful or bad faith conduct must be proved.")  Here, Plaintiff alleges that Defendants provided erroneous information regarding the amount of Plaintiff's benefits. (Compl. ¶¶ 14, 15, 18, 34). Plaintiff does not, however, assert any facts that Defendants acted in bad faith or were negligent in miscalculating his benefit and/or failing to discover the error.  Further, Plaintiff's counsel has conceded in a letter to Defendants that "Mr. Sundt does not believe that Telcordia acted intentionally or in bad faith when it advised him in 2001 regarding the pension benefit to which he was entitled. . . . Mr. Sundt has no reason to doubt that the information was provided in good

7

faith." (ECF No. 12, Ex. F, 3, Mar. 9, 2012).

Plaintiff relies heavily on In re Unisys Corp., 579 F.3d 220 (3d Cir. 2009) to support the breach of fiduciary duty claim. However, Plaintiff incorrectly argues that as delineated in Unisys, 579 F.3d at 228, negligence is not an element of Sundt's breach of fiduciary duty claim. (Opp'n. Br. 17). The Unisys court made clear that an employer's state of mind is directly relevant to whether a material misrepresentation amounts to a breach of fiduciary duty:

> [W]hile showing that the fiduciary had actual knowledge that a particular employee was about to be misled is not required to satisfy [the material misrepresentation] element, establishing a fiduciary's liability as a result of inadequately disclosed information may involve an inquiry into the employer's knowledge of an employee's knowledge and understanding . . . in order to determine if the employer was aware of the confusion generated by its silence.

579 F.3d at 229 (quotations omitted).

Absent a showing of either (1) case law in support of the proposition that a pension plan participant is entitled to receive the double benefit that Plaintiff here has received and (2) negligence or bad faith on the part of Defendants in this case, the Court, even in construing the facts in a light most favorable to the Plaintiff, cannot find enough factual support for Plaintiff's argument that he is entitled to relief for Defendants' breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3). Accordingly, Defendants' Motion to Dismiss Count I is granted with prejudice.

**Count II. - Equitable Estoppel, Pursuant to 29 U.S.C. § 1132 (a)(3)**

In Count II, Plaintiff asserts that Defendants made inaccurate representations regarding the amount of monthly retirement benefits to which Plaintiff was entitled. Plaintiff further contends that these misrepresentations were material, because as a reasonable employee, Plaintiff

relied on them in making his decision to retire, and without those inaccurate representations, Plaintiff would not have elected to retire. (Compl.¶¶ 9, 10).

A participant or beneficiary in an employee benefit plan subject to ERISA can also state a claim for "appropriate equitable relief" pursuant to section 502(a)(3) of ERISA based on a theory of equitable estoppel. Curcio v. John Hancock Mut.Life Ins. Co., 33 F.3d 226, 235 (3d Cir. 1994). To establish a legally sufficient cause of action for equitable estoppel, a plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances. Pell v. E.I. DuPont De Nemours & Co., 539 F.3d 292, 300 (3d Cir. 2008). Extraordinary circumstances exist "where there are 'affirmative acts of fraud,' where there is a 'network of misrepresentations over an extended course of dealing,' or where 'particular plaintiffs are especially vulnerable.'" Id. at 300 (citing Kurz v. Phila. Elec. Co., 96 F.3d 1544, 1553 (3d Cir. 1996)).

The facts asserted by Plaintiff in the Complaint unsuccessfully attempt to demonstrate either a network of misrepresentations by Defendants or that Plaintiff was particularly vulnerable in order to satisfy the extraordinary circumstances prong enumerated in Pell. Plaintiff alleges that Defendants made repeated errors in connection with calculating his benefits and that Plaintiff was especially vulnerable because he was relying on the inaccurate information in determining whether or not to retire. (Compl. ¶¶ 55, 56, 57). Defendants first misrepresented the amount of Plaintiff's benefits in 2001, when Plaintiff was considering whether or not to retire. (Pl. Opp'n Br. 21). Further, Plaintiff argues that each monthly retirement check of $5,901.75, sent to him by Defendants from December 2001 until Defendants notified Plaintiff of the miscalculation in 2010, constituted a reaffirmation of the misrepresentations and miscalculations that occurred in

9

2001. (Pl. Opp'n Br. 24). However, as Defendants point out in their Reply Brief, the recirculation of the same pension benefit calculation is not a network of repeated misrepresentations. See Gramm v. Bell Atlantic Mgmt., 983 F. Supp 585 (D.N.J. 1997) (employee could not show extraordinary circumstances based on "repeated misrepresentations" where he was given the same mistaken pension benefit calculation multiple times).

As to whether or not Plaintiff was especially vulnerable, it is not necessary to delve into Defendants argument that extraordinary circumstances exist only in instances of imminent and life threatening health emergencies because the allegations in Plaintiff's Complaint state no more than mere conclusions that Plaintiff was especially vulnerable. Plaintiff states that he was "especially vulnerable at the time when he relied upon the inaccurate information provided to him by the Defendant Fiduciaries, because he was relying upon this information in determining whether or not he was in a position to retire" and that "defendants knew or should have known that Plaintiff was relying on the information they provided." (Compl.¶ 56). The Court cannot infer that the act of contemplation as to whether or not to retire renders a party especially vulnerable without further factual support. If anything, this paragraph of the Complaint speaks to the second element of an equitable estoppel claim, that Plaintiff reasonably and detrimentally relied on Defendants representations. However, this assertion does not give any indication of extraordinary circumstances. Accordingly, Defendants' Motion to Dismiss Count II is granted without prejudice.

**Count III- Recovery of Plan Benefits, Pursuant to 29 U.S.C. § 1132 (a)(1)(B)**

In its Opposition Brief, Plaintiff withdraws this Cause of Action. (Pl. Opp'n Br. 1, fn. 1). Accordingly, this Count is dismissed with prejudice.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Complaint is **granted with prejudice as to Counts I and III and granted without prejudice as to Count II**. An appropriate Order accompanies this Opinion.

                                                                                  Dennis M. Cavanaugh, U.S.D.J.

Date:       November 9, 2012
Orig.:      Clerk
cc:         All Counsel of Record
            Hon. Mark Falk, U.S.M.J.
            File